## GUPTILL *v.* MACON STONE SUPPLY COMPANY.

A lease for ten years of a stone quarry contained a covenant that the lessee should pay a stated sum for each car of stone quarried, and that monthly settlements should be had. The landlord sued out a warrant to summarily dispossess the tenant under the Civil Code, § 5385, on the ground of the tenant's failure to pay rent. The tenant filed the statutory counter-affidavit. Thereafter the landlord accepted from the tenant rent that accrued, under the lease, subsequently to the institution of the summary process. Such acceptance operated as a waiver of the landlord's right to claim a forfeiture of the lease because of the tenant's arrears prior to the issuance of the summary process.

OCTOBER 14, 1913.

Eviction. Before Judge Daniel. Monroe superior court. October 5, 1912.

*R. L. Williams Jr., Elmer Burnham,* and *Charles M. Cram,* for plaintiff.

*Persons & Persons* and *Hall & Hall,* for defendant.

EVANS, P. J. O. F. Guptill leased a stone quarry to the Macon Stone Supply Company for the term of ten years from August 19, 1911, the lessee agreeing to pay, for the first two thousand cars of stone shipped from the quarry, the sum of $1.25 per car, and for the stone thereafter shipped the sum of $1 per car. The lease contained the following covenants: "Statements of the cars shipped and the amount due the lessor herein to be rendered by the lessee to the lessor on the first day of each month during the term of this lease, and monthly settlements to be made by the lessee with said lessor covering such amounts as may be due under the terms of this lease." "In the event the lessee herein shall,

during the term of this lease, for any four consecutive months, fail to operate said quarry and to make payments specified herein within sixty days from the time same becomes due, then this lease, at the option of the lessor herein, may be declared null and void." On February 20, 1912, the landlord sued out a dispossessory warrant against his tenant, on the ground of its failure to pay the rent of the premises as per agreement in the lease contract. The tenant made a counter-affidavit denying that the lease had expired or that it had failed to pay the rents due the landlord under the terms of the lease. The proceedings were duly returned to the superior court for trial, which resulted in favor of the defendant. The court overruled the landlord's motion for a new trial, and he excepts.

We do not find it necessary to discuss the various assignments of error contained in the motion for new trial, for the reason that the verdict was demanded by the evidence. The only material difference between the testimony of the contending parties related to the payment for four cars of stone quarried in September and October, 1911, amounting under the contract to $5; the landlord contending that the tenant had failed to pay this amount, and the tenant contending that it had paid for all the stone quarried. The landlord testified, that about the 14th or 15th of February, 1912, he demanded possession of the premises on account of the failure to pay the $5 claimed to be due for the preceding months of September and October; that on February 17th, and three days before the suing out of the warrant to dispossess, he accepted from his tenant amounts due for the months of November and December, 1911; that after the suing out of the dispossessory proceeding he had received all royalties on stone shipped from the quarry, due at the time of the trial, which occurred several months thereafter. The defendant introduced in evidence the letters in which these various remittances by it were made subsequently to the suing out of the dispossessory warrant, in all of which the remittances were stated to be in payment of royalties due on stone shipped during the various months for which the remittance was made, according to the lease contract. There was, therefore, no dispute that the landlord, notwithstanding his claim of a forfeiture resulting from a failure to pay a portion of the September and October rent, had received, since the institution of the summary proceed-

ing to evict the tenant, rent subsequently accruing under the lease contract. Under such circumstances the landlord will be held to have waived his right to claim a forfeiture of the lease contract.

It is immaterial whether the landlord was undertaking to give effect to a contractual forfeiture, or was proceeding solely under the Civil Code, § 5385, which authorizes, at the instance of the land-lord, the issuance of a warrant to dispossess his tenant who fails to pay rent when due. Under this code section the landlord, after demand for the possession of the rented premises, may proceed to dispossess his tenant who has failed to pay rent when due. In either instance, after the institution of the statutory summary proceeding, the attitude of the landlord is that the tenant is no longer entitled to the possession of the premises by virtue of the lease contract. His action is voluntary. Instead of undertaking to collect the rent by distress, he proposes to evict the tenant as being no longer entitled to possession, on account of his failure to pay rent when due. Having voluntarily elected to treat his tenant as no longer entitled to the possession, his course must be consistent with this claim in the further progress of the proceeding which he has instituted. If he receives rent accruing subsequently to the issuance of the dispossessory warrant, and accepts it as being a payment under the original lease contract, he affirms that the lease contract is still in existence. By his own acts he admits the continuance of the lease, and waives any prior forfeiture. A landlord who recognizes a lease as a subsisting, operative contract should not, in equity or in good morals, be permitted to insist upon a past forfeiture, if there has been one. And it has been held, both in England and in this country, that a landlord by acceptance from his tenant of rent accruing after a breach of the condition in the lease, with knowledge that the breach had been committed, waives the right to declare the lease forfeited on account of the breach. Dendy *v.* Nicholl, 27 L. J. C. P. 220, 15 Eng. Rul. Cas. 783; Kenny *v.* Seu Si Lun, 101 Minn. 253 (112 N. W. 220, 11 L. R. A. (N. S.) 831, 11 Ann. Cas. 60, and cases cited in notes).

There is another substantial reason why the landlord should be deemed to have waived any forfeiture resulting from the tenant's failure to pay rent, by accepting rents subsequently to his institution of his dispossessory process. By the Civil Code, § 5389, it is provided that if the judgment goes against the tenant, it shall be

for double the rent reserved or stipulated to be paid. It has been held that under this code section the landlord, if entitled to recover possession of the premises, is also entitled to recover double the rent contracted to be paid, accruing since the demand. If, after the institution of his proceeding, the landlord accepts subsequently accrued rent, if he be entitled to the premises, he would also be entitled to double the rent accruing since his demand, notwithstanding he may have received a part of the same from the tenant on the rent contract. The statute for the summary removal of tenants who fail to pay rent is for the benefit of landlords, and in derogation of common law, but should never be permitted as an agency to collect double rent against the tenant as a wrong-doer, after the landlord has received subsequently accruing rent under the contract. *Judgment affirmed. All the Justices concur.*